MONROE TURNER, *alias* M. B. TURNER V. THE STATE.

No. 22687. Delivered December 22, 1943.

The opinion states the case.

*W. W. Kirk,* of Plainview, (*Chas. H. Dean,* of Plainview, on the brief), for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin for the State.

KRUEGER, Judge.

The offense is forgery. The punishment is confinement in the State penitentiary for a period of five years.

Appellant's main contention is that the evidence is insufficient to warrant and sustain his conviction. We have carefully read the record and reached the conclusion that his contention is well founded.

It is charged in the indictment that on or about the 9th day March, A. D., 1943, and anterior to the presentment of the indictment Monroe Turner, alias M. B. Turner, without lawful authority and with intent to injure and defraud, did wilfully and fraudulently make a false instrument in writing purporting to be the act of another, to-wit: C. M. Wilson. The indictment then sets out the check bearing date March 9, 1943, in the sum of $125.00, and purporting to have been signed by C. M. Wilson.

In the development of its case the State called as a witness, C. M. Wilson, the person whose name is signed to the check. He testified in substance that the first time he saw the check was on April 1st, when he received his bank statement; that he took it and the check in question to the bank and laid them down in front of Frank Bain, Vice-President of the bank; that Bain looked down on the check and then looked up at Wilson and said: "That's a forged check, ain't it?" Wilson replied: "What do you think, Frank?" Bain then said: "It is, undoubtedly." Wilson replied: "That's right." Wilson then asked Bain if he had ever seen that check before, to which he replied: "No, Mr. Wilson, I never did see it before; but don't you worry, you'll get the money back." Wilson did get his money back from the Hale County State Bank. He further testified that he went to the County Attorney's office in company with Mr. Bain, where they talked to Ted Andrews, a deputy sheriff, who took charge of the check.

The State offered the check in evidence upon the trial and also, in developing its case in chief, introduced a voluntary statement made by appellant to the District Attorney and to the grand jury, which statement was made after he was warned by the District Attorney as required by law, and contains,

among other things the following: "My name is Monroe Turner, and I live in Amarillo, Texas. I formerly lived here in Hale County, Texas. I know that I am charged with the offense of forgery. The District Attorney showed me the check that I am charged with forging and I did not sign the check. I did not sign the name of C. M. Wilson to the check, and I did not endorse it. I do not know anything about the check."

E. N. Martin, an employee of the Department of Public Safety, testified that by comparing the handwriting on the statement signed by appellant with the alleged forged check introduced in evidence, it was his opinion that all of the writing was done by the same person. The witness had in his possession two hotel registration cards presumably written by the appellant.

Mr. Hoyt Curry also testified for the State as a handwriting expert and stated that he was familiar with the handwriting of the appellant; that in his opinion the signature on the alleged forged check, when compared with two other checks admittedly bearing the genuine signature of the appellant, was written by him.

Appellant did not testify upon the trial.

Article 979, P. C., reads as follows: "He is guilty of forgery who without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing purporting to be the act of another, in such manner that the false instrument so made would (if same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever."

It will be noted that under the statute just quoted, it was incumbent upon the State to prove that the name of C. M. Wilson was signed to the check in question without lawful authority. Mr. Wilson failed to so testify. However, he did testify that the check was a forgery. This was but a legal conclusion which, however, in the absence of an objection thereto, might be sufficient to establish the alleged forgery.

In the case of Shanks v. State, 25 Texas Supp. 326, the court said: "It is necessary to allege and prove that the instrument charged to be forged was made without lawful authority."

In our opinion, this is a correct pronouncement of the law as it existed then and as it exists now. When the State has witnesses available by whom it might prove a necessary fact and fails to do so, such fact will be construed most strongly against it. However, if it be conceded that the statement by Wilson to the effect that the check was a forgery was sufficient to prove it to be such, yet, it failed to connect appellant with the commission thereof. The State, no doubt, realized that it was necessary to connect appellant with the forgery charged, and in order to do so, it called two witnesses who claimed to be experts on handwriting who, by comparison of the handwriting on the check in question with that of other documents bearing the genuine signature of the appellant, expressed the opinion that he wrote the name of C. M. Wilson on the check.

Article 731, C. C. P., reads as follows: "It is competent to give evidence of handwriting by comparison, made by experts or by the jury. Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath."

In the present case, it appears that appellant made the statement put in evidence by the State to the grand jury. While it is not shown by direct evidence that he was sworn as a witness before the grand jury and denied the execution of the check under oath, yet, presumably, he was so sworn. It is our opinion that the proof on the part of the State by the so-called experts on handwriting is not of sufficient probative force to overcome the direct and positive testimony introduced by the State as contained in the appellant's said statement. When the State offers a statement or confession by the defendant which is exculpatory in its nature, it is bound thereby unless it proves the same to be false. See Banks v. State, 56 Tex. Cr. R. 262; De Leon v. State, 155 S. W. 247, 68 Tex. Cr. R. 625. In our opinion, the testimony of the expert witnesses, based on the comparison of handwriting alone, is insufficient to overcome appellant's direct and positive statement which he made to the grand jury, which the State introduced and for the truth of which it vouched. Therefore, we feel constrained to sustain appellant's contention that the evidence is insufficient to sustain his conviction. In support of what we have said here, we refer to the following authorities: Jones v. State, 7 Tex. Cr. App. 457; Spicer v. State, 52 Tex. Cr. R. 180; DeVere v. State, 100 Tex Cr. R. 61; Joffre v. Mynatt, 206 S. W. 951.

The judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.